[Crim. No. 3962. Third Dist. Oct. 4, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES FRANKLIN GOLDMAN, Defendant and Appellant.

Cullen A. Stinnett, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, and Harold F. Bradford, Deputy Attorney General, for Plaintiff and Respondent.

FRIEDMAN, J.—We granted a rehearing in order to reconsider this appeal in the light of an augmented record. A courtroom colloquy in which defendant participated at the time of his arraignment on July 14, 1965, was not included in the reporter's transcript nor brought to our attention until after our original decision was filed.

Defendant, an inmate of Folsom Prison, appeared in superior court on July 14, 1965, with court-appointed counsel and entered a plea of guilty to a charge of attempted escape. (Pen. Code, § 4530, subd. (b).) The court continued the case for imposition of sentence. At the arraignment for judgment on July 22 defendant's counsel requested permission to withdraw the plea of guilty, stating that defendant had been "under medication, tranquilizers" when he entered his plea the previous week. The court denied the motion and pronounced sentence. Sole ground of appeal is that court-appointed trial counsel inadequately represented defendant by failing to offer proof (or to request a continuance for the purpose of producing proof) of an improvident plea of guilty.

The dialogue between the trial court and counsel at the time of the motion to withdraw the plea is reproduced in the margin.[1]

█ Inadequacy of legal representation by counsel appointed to represent an indigent defendant may amount to a

---

[1] "[THE COURT]: Any legal cause to show why judgment and sentence should not now be pronounced.

"[DEF. COUNSEL]: Yes, your Honor. Last week when the Defendant entered the plea to the charge contained in the Indictment, he was under medication, tranquilizers.

"THE COURT: Who told you that?

"[DEF. COUNSEL]: The Defendant, your Honor. I am also now given to understand that he is in segregation at the Prison and awaiting psychiatric evaluation and treatment; and therefore, I feel that the plea should be set aside and the Defendant should be allowed to undergo psychiatric treatment before any plea is entered to this charge.

"We request permission of the Court to withdraw the plea that was previously entered.

"THE COURT: Is that all you have to submit to this Court?

"[DEF. COUNSEL]: Yes, your Honor. Just received all of this information this morning. I have not had ample opportunity to verify the facts with the authorities at Folsom.

"THE COURT: I read this report on this matter, carefully conceived attempted escape; almost resulted in tragedy for this man. Could well have done so had it not been for the fact that the guard maintained his composure pretty well.

"I see no reason for continuing this matter or for permitting him to change his plea. Anything further?

"[DEF. COUNSEL]: No. Nothing further, your Honor.

"THE COURT: Request for permission to change plea is denied."

denial of the constitutional right to counsel and provide ground for reversal. ■ The leading California case, *People* v. *Ibarra*, 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487], describes the principal standards for measuring adequacy of legal representation: "To justify relief on this ground, 'an extreme case must be disclosed.' [Citations.] It must appear that counsel's lack of diligence or competence reduced the trial to a 'farce or a sham.' [Citations.] ■ It is counsel's duty to investigate carefully all defenses of fact and of law that may be available to the defendant, and if his failure to do so results in withdrawing a crucial defense from the case, the defendant has not had the assistance to which he is entitled."

■ California law entitles a defendant to the effective aid of counsel not only at his trial but at all stages of the proceedings. (*In re Johnson*, 62 Cal.2d 325, 329 [42 Cal.Rptr. 228, 398 P.2d 420] ; *People* v. *Avilez*, 86 Cal.App.2d 289, 294 [194 P.2d 829].) Federal constitutional demands arise when the proceeding is at a critical or crucial stage. (*Massiah* v. *United States*, 377 U.S. 201, 205 [84 S.Ct. 1199, 12 L.Ed.2d 246] ; *White* v. *Maryland*, 373 U.S. 59, 60 [83 S.Ct. 1050, 10 L.Ed.2d 193].) It is said that federal due process requires reversal of a conviction which is "fundamentally unfair" for lack of the effective aid of counsel. (*People* v. *Mattson*, 51 Cal.2d 777, 790, fn. 5 [336 P.2d 937].) ■ Token or ineffectual aid of counsel at the time of a plea of guilty may necessitate reversal. (*People* v. *Avilez, supra*, 86 Cal.App.2d 289; *People* v. *McGarvy*, 61 Cal.App.2d 557 [142 P.2d 92].)

Penal Code section 1018 authorizes the trial court "for good cause shown" at any time before judgment to grant the defendant's application for leave to withdraw a guilty plea and substitute a plea of not guilty.[2] The statute expressly directs liberality in permitting the change of plea. (*People* v. *Francis*, 42 Cal.2d 335, 338 [267 P.2d 8].) The statutory procedure finds most frequent expression in withdrawal of a plea which is improvident, that is, one made under some influence which overcame the defendant's exercise of free judgment. (*People* v. *Brotherton*, 239 Cal.App.2d 195, 200 [48

---

[2]Penal Code section 1018 declares: ". . . On application of the defendant at any time before judgment the court may, and in case of a defendant who appeared without counsel at the time of the plea the court must, for good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted. . . . This section shall be liberally construed to effect these objects and to promote justice."

Cal.Rptr. 513]; *People* v. *Cooper,* 123 Cal.App.2d 353, 356 [266 P.2d 566]; *People* v. *Griffin,* 100 Cal.App.2d 546, 548 [224 P.2d 47].) Appellate review of trial court response to such a motion is usually grounded on asserted abuse of discretion. An appellate court will not disturb the grant or denial of the motion unless abuse of discretion is clearly shown. (*People* v. *Brotherton, supra,* 239 Cal.App.2d at p. 200; *People* v. *Beck,* 188 Cal.App.2d 549, 552 [10 Cal. Rptr. 396].) The present appeal shifts the focus to adequacy of legal representation by counsel in the presentation of the motion. Although with understandable reluctance, court-appointed appellate counsel pursues his duty and points out that court-appointed trial counsel neither supported his motion with evidence nor moved for a continuance to secure evidence.

 Ordinarily motions in criminal cases are made orally in open court. They are supported by affidavit, by court records and occasionally by oral testimony. (See Witkin, Cal. Criminal Procedure (1954) § 22, p. 24.) California case law uniformly demands that the basis for a motion to withdraw plea be established by "clear and convincing evidence" or "requisite proof." (*People* v. *Brotherton, supra,* 239 Cal. App.2d at pp. 200-202; *People* v. *Perry,* 220 Cal.App.2d 841 [34 Cal.Rptr. 110]; *People* v. *Beck, supra,* 188 Cal.App.2d at p. 553; *People* v. *Ottenstror,* 127 Cal.App.2d 104 [273 P.2d 289]; *People* v. *Cooper, supra,* 123 Cal.App.2d 353; *People* v. *Burkett,* 118 Cal.App.2d 204 [257 P.2d 745].) The motion must be supported by "documentary or oral evidence, or both." (*People* v. *Lamb,* 64 Cal.App.2d 409, 411 [148 P.2d 873].) A defendant's failure to produce any support except unsworn statements is a factor in finding no abuse of discretion in rejection of the motion. (See *People* v. *Brotherton, supra,* 239 Cal.App.2d at pp. 201-203; *People* v. *Gannaro,* 216 Cal.App.2d 25, 27-28 [30 Cal.Rptr. 711]; *People* v. *Singh,* 156 Cal.App.2d 363, 366 [319 P.2d 697]; *People* v. *Moffett,* 137 Cal.App.2d 626, 629-630 [290 P.2d 667].) In *Brotherton, supra,* the defendant, like the present defendant, claimed he had entered a drug-influenced plea of guilt and asserted trial court abuse of discretion in refusing to permit its withdrawal. In sustaining the trial court's discretion, the appellate court observed: "Reference to the record before this court reflects that the defendant did not file any affidavit or declaration in connection with his motion, nor did he offer more than his unsworn statement in support of it. . . . There is nothing in

the record to show that he has a bona fide defense to either of the charges.'' (239 Cal.App.2d at p. 202.)

While defendant's claims of psychiatric disturbance and tranquilizers were thin, they were both possible and verifiable. Inferably, defendant was transferred from Folsom Prison to the Sacramento County jail for arraignment on July 14 and again for sentencing on July 22. He could legitimately come by tranquilizers only in the course of treatment by prison doctors. The truth of his claim, the kind and quantity of medication, the time of ingestion in relation to the time of arraignment and the medical effect upon his volitional capacity were matters ascertainable through prison personnel, prison records and, if necessary, medical opinion. If in fact tranquilizers were administered as a consequence of medical treatment for a physical or psychiatric condition which might have affected his plea, evidence of that fact was available. If, as counsel stated, defendant was receiving some kind of psychiatric treatment at the prison, that circumstance too would bear heavily on his claim of an improvident plea.

For all that the record shows, counsel had not talked with his client between the arraignment and the appearance for sentence. If so, the morning of July 22 was the first opportunity defendant had of communicating his claim to the attorney. Counsel's statement that he had just received the information that morning indicates that he had had no time to investigate or appraise defendant's claim. If the claim was worth making in open court, it was worth investigating. Thus a motion for continuance was appropriate. Instead, counsel presented the motion for withdrawal of plea then and there. So presented, the motion was supported by no preparation, no evidence, no offer of proof. It rested on the unsworn repetition of unsworn information which counsel had received from his client, a convicted felon whose record and self-interest could only stimulate disbelief. As presented, the motion was ritualistic, implicit with an admission of weakness and foredoomed to failure. There was no abuse of trial court discretion in the court's denial of relief, because nothing had been presented upon which the court could act.

The motion to withdraw plea was either seriously intended or not seriously intended. The Attorney General points out that the cold transcript limits appellate ability to weigh the defendant's credibility, urging that defense counsel was in a better position to evaluate his client's statements than an appellate court, which should therefore accept his evaluation.

The implication is that defense counsel was indulging in the empty display of claims in which he had no confidence and which were not worth investigating. The argument seeks affirmance on the inacceptable theory that the attorney's action was insincere rather than inadequate. Appellate attempts to measure the sincerity of activities in the trial court would strain the cold transcript more severely than efforts to weigh credibility. ■ Limitations upon appellate review and regard for the professional obligations of trial counsel compel the assumption that such actions are seriously intended and seriously pursued.[3]

■ Although a fully supported motion would have merited more consideration, both the trial judge and trial counsel knew what the augmented record now demonstrates to this court—that a trial could not conceivably result in acquittal. Whatever the qualitative appraisal, failure or inadequacy of legal representation does not amount to a constitutional deprivation unless it has crucially affected the defense. (*Massiah* v. *United States, supra,* 377 U.S. at p. 205; *White* v. *Maryland, supra,* 373 U.S. at p. 60; *Hamilton* v. *Alabama,* 368 U.S. 52, 55 [82 S.Ct. 157, 7 L.Ed.2d 114]; *People* v. *Ibarra, supra,* 60 Cal.2d at p. 464.)[4] While withdrawal of a guilty plea may be as crucial as the trial itself, such is not the case here. Defendant was charged with attempted escape, a simple offense usually proved with ease. The record reveals no assertion of or clue to a bona fide defense. That defendant had in fact attempted to escape from Folsom Prison is demonstrated by his statements in open court on July 14, when he entered

[3]A desperate defendant's insistence upon the assertion of incredible or unpalatable claims poses court-appointed counsel with an uncomfortable choice between loyalty to his client's cause and his obligation to the court. In *People* v. *Nooner,* 237 Cal.App.2d 210 [46 Cal.Rptr. 689], the public defender was permitted to withdraw as defense counsel for the limited purpose of permitting the accused to seek withdrawal of his guilty plea, an attempt based upon assertions which turned out to be incredible.

[4]Numerous decisions illustrate appellate refusal to measure the prejudice caused by a failure of legal representation, once the failure is deemed crucial, e.g., *Escobedo* v. *Illinois,* 378 U.S. 478, 491 [84 S.Ct. 1758, 12 L.Ed.2d 977]; *White* v. *Maryland, supra,* 373 U.S. at p. 60; *Hamilton* v. *Alabama, supra,* 368 U.S. at p. 55; *Crooker* v. *California,* 357 U.S. 433, 439-440 [78 S.Ct. 1287, 2 L.Ed.2d 1448]; *Lisenba* v. *California,* 314 U.S. 219, 236 [62 S.Ct. 280, 86 L.Ed. 166]; *People* v. *Crooker,* 47 Cal.2d 348, 353 [303 P.2d 753]. Nevertheless, inquiry into the crucial character of the failure is hardly distinguishable from the process of probing for miscarriage of justice, enjoined upon California courts by article VI, section 4½, of the state Constitution.

his plea of guilty.[5] The only defense conceivably available was one bottomed upon lack of capacity and absence of criminal intent. (See Pen. Code, § 26.) The crime of escape requires no specific mental state, hence it is not predictable that defendant's psychiatric assertions would play a defensive role. (See *People* v. *Conley,* 64 Cal.2d 310, 315-320 [49 Cal.Rptr. 815, 411 P.2d 911] ; *People* v. *Anderson,* 63 Cal.2d 351, 364-366 [46 Cal.Rptr. 763, 406 P.2d 43].) His statement in open court evidences full comprehension of his actions and, by an assertion of motivation, deliberation in taking it. It also belies his claim of an improvident plea. On the occasion of his plea he displayed precise knowledge of the contents of the grand jury transcript and was alert to assure himself that the trial judge would be aware of his state of mind at the time he made the statements reflected in that transcript. His precision and alertness belie his later claim of impaired awareness. The very occasion for the claim of improvident plea was created for defendant by the trial judge's voluntary decision to defer sentencing. The record demonstrates that the lost motion did not cause the loss of a crucial defense. Thus defendant suffered no constitutional deprivation and no miscarriage of justice occurred.

Judgment affirmed.

Pierce, P. J., and Regan, J., concurred.

---

[5]Following defendant's plea of guilty, his court-appointed attorney stated that the defendant waived reference to the probation officer and requested immediate sentence. The following discussion then occurred:

"THE COURT: Yes, under the law this matter need not be referred to

the Probation Officer. However, it is my general policy in these matters to get a copy of the case summary from Folsom, and on the facts relating to the case, in order that I might make an intelligent judgment as to how these sentences shall run.

"Do you have anything you wish to say?

"[DEF. COUNSEL]: Yes, the defendant does request to direct the Court's attention to the Grand Jury transcript.

"THE DEFENDANT: In the Grand Jury transcript on page 17, line 13, I was asked the question: 'Did you plan to escape?' In reference to my answer on 15, 16 and 17, I wish to say what I said here, that I was not in too good a shape. I had been roused and crossed for approximately a year by a correctional lieutenant. I worked on this job for four and a half years. Many a time I could have walked out in the yard when it was foggy, at 1:00 or 2:00 o'clock in the morning. The night I left, the night I done this, I broke down and cried and shook, and within five minutes decided to do what I did, but I did do it.

"THE COURT: All right. I'm going to continue this for one week for sentence, a week from today. In the meantime, I'll get from the Warden a copy of your case summary and the facts and presentation here.

"THE DEFENDANT: In the records, in the information at the institution, regarding the charges and statements of their various officers, I believe that you will find information verifying what I stated. And I also wrote a note to my sergeant I was working for and told him I was sorry it had to happen that way, that it [sic] was a good fellow to work for, but I could not take any more rousing from the lieutenant."