Alador ALEX, Appellant,

v.

STATE of Alaska, Appellee.

No. 1224.

Supreme Court of Alaska.

April 26, 1971.

James K. Singleton, Jr., Anchorage, for appellant.

G. Kent Edwards, Atty. Gen., Juneau, Harold W. Tobey, Dist. Atty. and Robert L. Eastaugh, Asst. Dist. Atty., Anchorage, for appellee.

Before BONEY, C. J., and DIMOND, RABINOWITZ and CONNOR, JJ.

OPINION

BONEY, Chief Justice.

Appellant, Alador Alex, was convicted following a jury trial of the crime of felony escape. The facts involved have been stipulated by counsel.

On May 11, 1969, Alex was confined at the Adult Conservation Camp in Palmer where he was serving a sentence imposed after conviction of a felony. Alex failed to appear for the 4:30 p. m. meal on Sunday, May 11, 1969. He was subsequently located at approximately 1:00 a. m. on May 12, 1969 in the City of Anchorage. On May 21, 1969, Alex was indicted for the crime of felony escape under AS 11.30.090.

At his trial, Alex testified in his own behalf. He stated that on the date of his escape, he was nervous, upset, and suffering from dermatitis and lack of sleep. May 11, 1969 being a Sunday, there was no work or assigned chores for Alex, and after receiving permission, Alex walked down to the prison dump where he noticed a path. Alex testified that he remembers starting down the path, but at that point he suffered a lapse of memory.

Alex' next recollection was being in the middle of the Palmer highway where a car stopped to avoid hitting him. As it turned out, the woman driving the car offered Alex a ride, which he accepted. He claims he told the woman he needed a ride back to the Palmer Camp and she agreed to take him. Instead, the woman drove to Palmer and purchased a bottle of liquor. Alex stated that he accepted liquor from the woman, became intoxicated, and lost track of what he was doing.

According to Alex' testimony, his next memory was of being in Anchorage with the woman. He became frightened about being absent from the camp for so long a time. In an effort to return, he sought and found an old girl friend with a car. Alex contends that he was being driven back to the Palmer Camp when he was apprehended by the authorities.

As a result of his absence from the Palmer Camp on May 11, 1969, Alex forfeited 168 days of statutory good time. In addition, he was prosecuted and convicted of escape. From that conviction, Alex has brought this appeal.

Alex has raised four issues in his appeal. The first two are directed toward the element of intent required by Alaska's escape statute. The third raises a question of double jeopardy. The fourth questions the constitutionality of Alaska's escape statute.

█ In his first point on appeal, Alex argues that the trial court erred in not instructing the jury that a specific intent to avoid the due course of justice is an essential element of the crime of escape. AS 11.30.090, Alaska's escape statute, is silent as to the definition of the crime of escape and as to its requisite element of intent.[1] Consequently, it is proper to look to previous statutory interpretations by this court and to the common law background of the crime.

In Richards v. State, 451 P.2d 359, 361 (Alaska 1969), this court had occasion to construe AS 11.30.090, and to take note of the essential elements of the crime. We held:

It was established that appellant was convicted of burglary, was committed to the custody of the Commissioner of Health and Welfare for a period of three years by reason of such conviction, was placed in the Fairbanks jail as designated by the commissioner under such judgment and commitment, and left that jail without lawful authority before his sentence had been served. This was proof of the essential elements of the crime of escape from custody or confinement.

In Richards, we failed to mention an intent to evade the due course of justice as an essential element of the offense. However, since Richards did not specifically raise a question of intent, the case is not necessarily controlling. Lacking a clear construction of the Alaska escape statute, we turn to the common law.

---

1. AS 11.30.090 provides:

A person who escapes or attempts to escape from the custody of a peace officer under a lawful arrest or from a jail or institution in which he is detained by a peace officer or confined by direction of a court in this state or from custody under process issued by a court in this state is punishable,

(1) if the custody or confinement is by an arrest on a charge of a felony or conviction of a felony, by a fine of not more than $5,000, or by imprisonment for not less than one year nor more than three years, or by both; or

(2) if the custody or confinement is for extradition, or by an arrest, or charge of, or conviction of a misdemeanor, by a fine of not more than $1,000, or imprisonment for not more than one year, or by both.

Alex has relied heavily upon two Colorado cases for the proposition that a specific intent to evade the due course of justice is an element of the crime of escape. Lewis v. People, 159 Colo. 400, 412 P.2d 232 (1966); Gallegos v. People, 159 Colo. 379, 411 P.2d 956 (1966). However, the cases cited by Alex do not stand unopposed in their interpretation of the law. Numerous authorities have held that no specific intent is required to commit the crime of escape. State v. Marks, 92 Idaho 368, 442 P.2d 778 (1968); People v. Goldman, 245 Cal.App.2d 376, 53 Cal.Rptr. 810 (1966), partially overruled on other grounds, In re Smiley, 66 Cal.2d 606, 58 Cal.Rptr. 579, 583, 427 P.2d 179, 192 (1967); People v. Miller, 196 Cal.App.2d 171, 16 Cal.Rptr. 408 (1961); People v. Haskins, 177 Cal.App.2d 84, 2 Cal.Rptr. 34 (1960); Wiggins v. State, 194 Ind. 118, 141 N.E. 56 (1923); State v. Leckenby, 260 Iowa 973, 151 N.W.2d 567 (1967); State v. Wharff, 257 Iowa 871, 134 N.W. 2d 922 (1965).

State v. Marks, *supra*, contains a highly persuasive holding indicating specific intent was not a necessary element of the crime of escape at common law. *Marks* is directly opposed to the Colorado cases relied upon by Alex. In *Marks*, the appellant, a convict, was riding with a group of prisoners in the back of a prison truck. Marks claimed that while the truck was stopped at an intersection a prisoner fell out. Marks left the truck to see whether the prisoner needed help, and other inmates followed. The truck drove off leaving the prisoners alone in the intersection. In affirming Marks' conviction, the Idaho Supreme Court upheld a lower court's ruling that a lack of specific intent to evade the due course of justice was not a defense to the crime of escape.

The reasoning of the Idaho court in reaching its decision is significant. That court looked to the common law to determine the meaning of the term "escape". The Idaho court cited and rejected the reasoning in Gallegos and Lewis, the Colorado cases relied upon by Alex. The basis of that rejection is a far more extensive and informative review of the early authorities than was undertaken in *Gallegos* or *Lewis*. The Idaho court concluded that at common law a specific intent to evade the due course of justice was not necessary to establish an escape. In other words, all that is required to constitute an escape is the voluntary intent to depart from custody. Wharton is in accord with this view:

> The ordinary intent required to constitute the offense of escape * * * is the intent to do the act voluntarily which results in the unlawful liberation from custody. 3 R. Anderson, Wharton's Criminal Law and Procedure § 1372 (1957).

In addition, the Idaho court examined Riley v. State, 16 Conn. 47 (1843), which was the keystone of the Colorado Supreme Court's decisions, and noted that the Connecticut court resorted to dicta in discussing intent, and that it is difficult to resolve whether specific or general intent was being considered in that discussion.

It was further observed in *Marks* that *Riley* and *Lewis* involved circumstances where a prisoner had apparent authority to leave custody. While these situations present appealing cases for relief, the same results could be obtained without requiring a specific intent, through the use of mistake of fact reasoning as to the defendant's permission to leave. Finally, in opposition to the discussion in *Riley, Marks* cited the early English decision of Hobert and Stroud's Case, Cro.Car. 209, 79 English Rep. 784 (1630), where it was held that "if a person be committed to a particular place and instead of confinement within the walls goes at large, he may be indicted for the misdemeanour, although he had the gaoler's permission." [2]

We conclude that the weight of authority, as reviewed by the court in *Marks,* indicates that only a general intent is required for the crime of escape. We hold

---

2. State v. Marks, 92 Idaho 368, 442 P.2d 778, 780 (1968).

that no specific intent to avoid the due course of justice need be proven to establish the crime of escape under AS 11.30.-090. The trial court committed no error in failing to instruct on a specific intent requirement.

In his second point on appeal, Alex argues that the trial court's instructions were erroneous under this court's holding in Speidel v. State, 460 P.2d 77 (Alaska 1969). At trial, Alex requested an instruction which paraphrased *Speidel*. So far as pertinent, the instruction read, "conduct cannot be criminal unless it is shown that the one charged with criminal conduct had an awareness or consciousness of wrongdoing". The reliance Alex places upon *Speidel* stems from the following statement in that case:

> It is said to be a universal rule that an injury can amount to a crime only when inflicted by an intention—that conduct cannot be criminal unless it is shown that one charged with criminal conduct had an awareness of some wrongdoing.[3]

Emphasizing *Speidel*, Alex contends that an awareness or consciousness of wrongdoing is an essential element of a general criminal intent. This being so, Alex argues that the trial court committed error when it instructed:

> To constitute the criminal intent necessary in the crime of escape it is necessary that the person intend to do an act which, if committed, would constitute a crime. Criminal intent exists whenever a person does that which the law declares to be a crime, even though he may not

know that he is committing a crime or that his act is wrong.

The contention raised by Alex requires us to consider what is necessitated by our holding in *Speidel*. In making our determination, we look to those basic principles and policies of our system of law which formed the foundation of that decision.

In *Speidel,* we dealt with a statute which made it a crime to fail to return a motor vehicle "without regard for the rights of the owner" or "with indifference whether a wrong is done the owner or not".[4] We found that under this terminology it was possible to be guilty of the offense when "there was an entire lack of any conscious deprivation of property or *intentional* injury".[5] (Emphasis supplied).

We found that "[i]f one fails to return an automobile out of neglect, without any intention to deprive the owner of his property or to convert property to his own use, or of doing wrong to the owner, he is made guilty of a felony although he may have acted unwittingly or inadvertently or negligently."[6] This, we said, was contrary to the general condition of criminal liability which requires not only the doing of an act, but also the existence of a guilty mind during the commission of the act.

We emphasized that under the statute a person might suffer a felony conviction for a simple negligent failure to act. To make such an act a serious crime without regard to an awareness of wrongdoing or the intentional infliction of injury was, in our opinion, inconsistent with the general law. We held: "[t]o convict a person of a felony for such an act, without proving criminal intent, is to deprive such person

---

3. 460 P.2d at 78 (footnote omitted). In expounding that rule, we relied upon Morissette v. United States, 342 U.S. 246, 250, 72 S.Ct. 240, 243, 96 L.Ed. 288, 293 (1952) (footnote omitted), where the United States Supreme Court stated:

   The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and per-

sistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil.

4. AS 28.35.026(b).

5. Speidel v. State, 460 P.2d 77, 80 (Alaska 1969).

6. *Id.*

of due process of law." [7]  We solidly adhere to that holding today.

Upon review of our decision in *Speidel*, the basic infirmity of the statute being considered there is apparent. That statute allowed a man to be convicted of a crime though he had acted entirely innocently, inadvertently or negligently. In overturning the statute, we adhered to the general rule of law and dictate of justice which requires that to constitute guilt there must be not only a wrongful act but a criminal intention.

This court would not then and will not now sanction conviction of a serious felony for mere inadvertence or simple neglect. However, undue emphasis should not be placed upon our use of the term "wrongdoing" in that opinion. It must be remembered that in *Speidel* we were dealing with a larceny-type offense. In reaching our decision in *Speidel*, we relied upon Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), where the United States Supreme Court noted that it was dealing with one of the "larceny-type offenses" in which courts have historically emphasized an intention to wrongfully deprive.[8]  As the Court said in *Morissette*, the criminal intent to steal or knowingly to convert is *"wrongfully* to deprive another of the possession of property".[9]  (Emphasis in the original). However, when speaking of the requisites of a general criminal intent as applied to all crimes, the Supreme Court did *not* emphasize a specific awareness of wrongfulness. Instead, the Court approved more general definitions of the required mental element by stating:

> The unanimity with which they [courts] have adhered to the central thought that wrongdoing must be conscious to be criminal is emphasized by the variety, disparity and confusion of their defini-

tions of the requisite but elusive mental element. However, courts of various jurisdictions, and for the purposes of different offenses, have devised working formulae, if not scientific ones, for the instruction of juries around such terms as "felonious intent," "criminal intent," "malice aforethought," "guilty knowledge," "fraudulent intent," "willfulness," "scienter," to denote guilty knowledge, or "mens rea," to signify an evil purpose or mental culpability.[10]

When one considers *Speidel* and *Morissette*, it is apparent that those cases deal with the necessity of basing serious crimes upon a general criminal intent as opposed to strict criminal liability which applies regardless of intention.[11]  The goal of these cases is to avoid criminal liability for innocent or inadvertent conduct.[12]  The use of the phrase "awareness of wrongdoing" is but one means of assuring this result. The phrase does not mean a person must be aware that the conduct he is committing is specifically defined as a wrongful act. Nor does it mean that a person must know an act is proscribed by law. Rather, the requirement is that a person's intent be commensurate with the conduct proscribed.

In *Speidel*, we required that an accused have acted with an awareness of wrongdoing, that is, with an awareness of depriving another of his property. In context, this requirement is consistent with the traditional concept of a larceny-type crime.

However, as applied to crimes generally, what is imperative, is that an accused's act be other than simply inadvertent or neglectful. What is essential is not an awareness that a given conduct is a "wrongdoing" in the sense that it is proscribed by law, but rather, an awareness that one is committing the specific acts which are defined by law as a "wrongdoing". It is, however, no

---

7. *Id.*

8. Morissette v. United States, 342 U.S. 252, 260–262, 72 S.Ct. 240, 96 L.Ed. 288, 299 (1952).

9. *Id.* at 276, 72 S.Ct. at 256, 96 L.Ed. at 307.

10. *Id.* at 252, 72 S.Ct. at 244, 96 L.Ed. at 294–295.

11. Speidel v. State, 460 P.2d 77, 78–79 (Alaska 1969).

12. *Id.* at 80.

defense that one was not aware his acts were wrong in the sense that they were proscribed by law. So long as one acts intentionally, with cognizance of his behavior, he acts with the requisite awareness of wrongdoing. In the words of Justice Holmes:

> If a man intentionally adopts certain conduct in certain circumstances known to him, and that conduct is forbidden by the law under those circumstances, he intentionally breaks the law in the only sense in which the law ever considers intent.

Ellis v. United States, 206 U.S. 246, 257, 27 S.Ct. 600, 602, 51 L.Ed. 1047, 1053 (1907).

■ The question in the present case is whether the trial court's instructions would have allowed a jury to convict without finding that Alex acted intentionally, and with an awareness of committing those acts defined by law as wrongful.

If a jury had believed Alex' testimony, they could have found he suffered a lapse of memory and awareness before leaving the Palmer camp. Under those circumstances, Alex' conduct would have been innocent and involuntary, and a conviction would not have been justified under *Speidel*. However, the trial court's instructions did not allow the jury to convict unless they found that Alex acted intentionally. The trial court charged:

> To constitute the criminal intent necessary in the crime of escape, it is necessary that the person intend to do an act which, if committed, would constitute a crime.

Thus, it was incumbent upon the jury to find that when Alex left the camp he did so intentionally, and with the necessarily included awareness of his conduct.

In the context of this case, leaving the Palmer camp was the wrongdoing committed by Alex. The trial court's instructions required the jury to find that Alex left the Palmer camp intentionally and, therefore, with an awareness of his conduct. The instructions then, required the jury to find that Alex acted with an awareness of his wrongdoing. It is of no consequence that the instructions did not require the jury to find that Alex knew he was committing a crime or that his act was wrong in a legal sense. It is sufficient that the jury was required to find that Alex acted intentionally and with an awareness of his conduct.

We conclude that the challenged instructions were sufficient under the requirements of *Speidel*. As we have said, the essential purpose of *Speidel* is to prevent criminal liability for a serious felony from being imposed in a manner akin to strict liability, that is without regard to the accused's awareness of his conduct and intent to commit the proscribed act. Since the trial court's instructions required a finding of intentional conduct, and the inescapably encompassed element of awareness, there was no error.

■ Alex next contends that the present action was precluded by constitutional prohibitions against double jeopardy.[13] Alex claims that he was subject to double jeopardy by the combination of the administrative forfeiture of 168 days of good time and the subsequent criminal prosecution for escape.[14] Alex presents no supporting authority for this proposition, and our research has revealed none. The relevant authority is, in fact, clearly contrary.[15]

13. The United States Constitution, Amendment V provides in pertinent part:
[N]or shall any person be subject for the same offense to be twice put in jeopardy. * * *
The Alaska Constitution, Art. I, § 9 provides in pertinent part:
No person shall be put in jeopardy twice for the same offense.

14. For a recent analysis of this court's approach to the problem of double jeopardy, *see* Whitton v. State, 479 P.2d 302 (Alaska 1970).

15. *See* United States v. Shapiro, 383 F.2d 680 (7th Cir. 1967); Mullican v. United States, 252 F.2d 398, 70 A.L.R.2d 1217 (5th Cir. 1958); Pagliaro v. Cox, 143

Recognizing that his contention is unsupported by authority, Alex has asserted a rather unusual proposition to bolster his position. We do not find it persuasive.

Alex contends that this court's holding in Hoffman v. State,[16] requires that we find jeopardy attaches in a state good time forfeiture proceeding. Alex relies exclusively upon that part of *Hoffman* which quotes from Judge Sobeloff's concurring opinion in Jones v. Rivers,[17] as follows:

> [T]here is no reason to attach significance to their technical classification as criminal rather than civil; the underlying feature to be noted is the fact that the liberty of the individual was involved.

In *Hoffman*, we held that an indigent has a right to be represented by counsel at a probation revocation proceeding. We based our decision upon a statutory interpretation of AS 12.55.110.[18] What we did there was to refuse to sanction discrimination between indigents and others in the application of the rights to counsel granted by AS 12.55.110.

In *Hoffman*, we noted that the statute would, in our opinion, be repugnant to the equal protection clause of both the Federal and Alaska constitutions if it were construed as embodying an intended dichotomy between indigent probationers and those who could afford counsel. In so holding we considered the trend of recent United States Supreme Court decisions dealing with the rights of indigents bringing criminal appeals.[19] We were cognizant that a probation revocation is not technically a criminal appeal; however, we felt that this distinction should not be controlling of the right to counsel. In discussing this point, we quoted Judge Sobeloff's opinion in *Rivers* which dealt with a parole revocation proceeding. However, *Hoffman* is in no way even remotely related to the requirements for the attachment of jeopardy. Yet, Alex would apparently read the brief quotation from *Rivers* as indicating that this court recognizes no differences between civil or administrative matters and traditional criminal trials in a court of competent jurisdiction. Such a position can amount only to a gross misinterpretation. Alex' reliance upon the opinion is entirely misplaced.

*Hoffman* does not hold that jeopardy attaches in every civil or administrative proceeding in which a penalty is imposed for some act which may or may not also be a crime. To so hold would lead to a strange result. As one court has stated:

> The existence or the forfeiture of good time is in no sense dependent upon whether the misconduct also may be a criminal act. It would be a strange anomaly if a mere infraction of prison rules would be a basis for forfeiture while commission of a serious crime while in custody and in respect to such custody could not be. This would lead to an absurd result.[20]

As another court pointed out in a similar case:

> The answer * * * to the double jeopardy claim * * * is that administrative disciplinary action under and within the first sentence, simply making service of it more burdensome, and the

F.2d 900 (8th Cir. 1944); People v. Conson, 72 Cal.App. 509, 237 P. 799 (1925); Schwickrath v. People, 159 Colo. 390, 411 P.2d 961 (1966); State v. Kennedy, 253 Or. 145, 453 P.2d 658 (1969); State v. Williams, 57 Wash.2d 231, 356 P.2d 99 (1960).

16. 404 P.2d 644, 646 (Alaska 1965).

17. 338 F.2d 862, 876 (4th Cir. 1964) (footnote omitted).

18. AS 12.55.110 provides:
   When sentence has been suspended, it shall not be revoked except for good

cause shown. In all proceedings for the revocation of a suspended sentence, the defendant is entitled to reasonable notice and the right to be represented by counsel.

19. Douglas v. People, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892 (1963); Griffin v. People, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956).

20. Pagliaro v. Cox, 143 F.2d 900, 901 (8th Cir. 1944).

imposition of punishment upon conviction of an offense are distinct and separate even though one and the same act constituted both the infraction of the prison rules and the criminal offense.[21]

In the present case, the administrative disciplinary proceeding did not, as Alex contends, constitute jeopardy for the crime of escape. He was at that time serving his sentence at the prison, and as an inmate, was subject to the prison discipline including reasonable punishment for infraction of rules. No new or greater sentence was impose upon Alex by virtue of the disciplinary action. Nor was he convicted of any offense.

We think that at least where the administrative penalty imposed does not result in confinement beyond the maximum term of the initial sentence imposed, no double jeopardy attaches as a result of a later prosecution for escape.

We hold that Alex' claim that he has twice been placed in jeopardy for the same offense is not well founded. In line with uniform authorities, we conclude that a good time forfeiture proceeding which does not increase the term of the original sentence, is an administrative proceeding at which jeopardy does not attach.

■ In his final contention, Alex asserts that AS 11.30.090 is constitutionally invalid in that it results in a denial of equal protection of the law.[22] Alex bases his contention on the fact that under the statute an escape is classified as a felony or misdemeanor on the basis of the crime for which the escapee was initially confined. Under the statute, it is a felony for a felon to escape, while it is a misdemeanor for a mis-

demeanant to escape.[23] This, Alex urges, amounts to an unconstitutionally arbitrary discrimination which bears no reasonable relation to the circumstances of the escape itself.

It is true that the classification is made to depend upon a circumstance disconnected from the actual commission of the escape. As Alex emphasizes, two persons, one a felon and one a misdemeanant, might escape together under identical circumstances and be treated differently. Alex would have us hold that this theoretically possible result shows an arbitrary and unnatural classification which operates to deny equal protection of the law. We cannot accede to such a position.

The requirements of equal protection amount to a prohibition of laws which, in their application, make unjust distinctions between persons.[24] If a rational basis for a classification is reasonably apparent, there is no denial of equal protection. It is elementary that the power to define crimes and fix punishments rests in the legislature. In the performance of that function, that body is to use the discretion lodged in it, and not be confined by narrow or unduly restrictive limits. We cannot say that a legislative judgment was unreasonable if it bears a rational connection to a legitimate public purpose. So long as a legislative classification is not based upon an arbitrary or unjustifiable distinction and does not invidiously discriminate between two groups, there is no denial of equal protection.[25]

The question presented here is whether AS 11.30.090 adopts a reasonable classification, or whether the classification is unjust,

---

21. United States v. Shapiro, 383 F.2d 680, 683 (7th Cir. 1967).

22. The United States Constitution, Amendment XIV § 1 provides in relevant part: [N]or shall any state * * * deny to any person within its jurisdiction the equal protection of the laws.
The Alaska Constitution, Art. I § 1 provides in relevant part:
This constitution is dedicated to the principles * * * that all persons

are equal and entitled to equal rights, opportunities, and protection under the law. * * *

23. *See* note 1, *supra.*

24. Leege v. Martin, 379 P.2d 447, 452 (Alaska 1963).

25. Application of Brewer, 430 P.2d 150, 153 (Alaska 1967); Nelson v. State, 387 P.2d 933, 935 (Alaska 1964).

arbitrary and without rational connection to a legitimate public purpose.

Under our statute, the crime of escape is divided into two classes on the basis of the felony or misdemeanor classification of the crime for which a person was initially incarcerated. All those within each class are subject to identical treatment. Under each class the punishment to be received is not arbitrarily or mandatorily fixed. Rather, the sentencing judge is given a range of discretion to be used in dealing with each offender.

It is true that under our statute the character and nature of an escape are not necessarily the basis upon which the crime is defined and the punishment fixed. However, the nature and method of an escape may well be considered by the judge when he exercises his discretion under the sentencing provisions. Moreover, there is no constitutional necessity for the designation of the crime and the extent of the punishment to be based solely or even in part on the nature of the escape.[26]

The law has long recognized a relation between the punishment for the escape and the offense for which the prisoner was held. Accordingly, the law has allowed more severe punishments for the escape of prisoners confined for a serious crime than for the escape of prisoners held for lesser crimes.[27] There is a broad latitude permitted to the legislature in classification so long as the distinctions made are supported in reason and logic. If there is some rea-sonable basis for a classification, it is not arbitrary or constitutionally invalid.[28]

Save only as limited by constitutional safeguards, the legislature may choose any reasonable means to protect the people from the violation of criminal laws.[29] In general, the comparative gravity of offenses and their classification and resultant punishments is for legislative determination. In the present case, reasonable factors in support of the legislative classification are apparent. The legislature could reasonably have believed that persons convicted of felonies which are generally more serious crimes than misdemeanors, present a greater threat to the public. Thus, a greater effort to deter their escape may reasonably be made. In addition, the legislature may have considered that felons are generally confined for a period of greater duration than are misdemeanants. The legislature could reasonably have felt that longer detention increases the motivation to escape and necessitates greater penalties to deter felons from escaping. We cannot know exactly what the legislature may have believed, nor do we intend to delineate every ground which might have supported their conclusion. It is sufficient that their determination was not unreasonable and without rational connection to a valid public purpose.

Several other states possess statutes similar to ours. These statutes have generally been sustained against constitutional attacks.[30] Alex cites cases which he says

26. See Ex parte Knapp, 73 Idaho 505, 254 P.2d 411, 415 (1953).

27. Commonwealth of Penn. ex rel. Sullivan v. Ashe, 302 U.S. 51, 53, 58 S.Ct. 59, 82 L.Ed. 43, 45 (1937).

28. Suber v. Alaska State Bond Committee, 414 P.2d 546, 553 (Alaska 1966).

29. Commonwealth of Penn. ex rel. Sullivan v. Ashe, 302 U.S. 51, 54, 58 S.Ct. 59, 82 L.Ed. 43, 46 (1937).

30. See Commonwealth of Penn. ex rel. Sullivan v. Ashe, 302 U.S. 51, 58 S.Ct. 59, 82 L.Ed. 43 (1937); State ex rel. Wilson v. Culver, 110 So.2d 674 (Fla. 1959); Rebon v. State, 203 So.2d 202 (Fla.Dist.Ct.App.1967); Malloroy v. State, 91 Idaho 914, 435 P.2d 254 (1967); Ex parte Knapp, 73 Idaho 505, 254 P.2d 411 (1953); State v. Rardon, 221 Ind. 154, 46 N.E.2d 605 (1943); Kelley v. Meyers, 124 Or. 322, 263 P. 903, 56 A.L.R. 661 (1928).

take a contrary position.[31] However, upon close examination it is apparent that these cases turn uniformly upon statutes that are clearly distinguishable from AS 11.30.090.

None of the cases cited by Alex deals with a statute which made a classification solely upon the felony and misdemeanor differentiation. In addition, the cited cases may be distinguished on one or both of two other grounds. First, the cited cases dealt with statutes which based the length of punishment for escape upon the length of the original sentence. With such a statute, there are not two logical and distinct classes in which all persons are treated alike, but as many differing classes and methods of treatment as there are initial sentences. Those statutes do not base a distinction on the classification of a crime for which the defendant was confined, but simply base a distinction upon the sentence initially imposed. Second, those cases dealt with statutes which established arbitrary and mandatory sentences which removed the sentencing discretion of the trial court. Discretion is not destroyed under our statute. Within each of the two classes created by AS 11.30.090, the trial court retains discretion to sentence within the statutory limits.

The classifications made by our statute are not arbitrary or unreasonable. We cannot say that the classification is not founded upon rational distinctions within the realm of legislative discretion. We hold that AS 11.30.090 does not deny equal protection of the law under either the federal or state constitution.

The judgment is affirmed.

ERWIN, J., not participating.

31. Ex parte Mallon, 16 Idaho 737, 102 P. 374 (1909) ; State v. Lewin, 53 Kan. 679, 37 P. 168 (1894) ; State v. Johnsey, 46 Okl.Cr. 233, 287 P. 729 (1930) ; Ex parte Cook, 13 Cal.App. 399, 110 P. 352 (1910).