NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| CHARLES P. MORAN,<br><br>                              Appellant,<br><br>              v.<br><br>STATE OF ALASKA,<br><br>                              Appellee. | Court of Appeals No. A-11299<br>Trial Court No. 3KN-11-1025 CR<br><br><br>O P I N I O N<br><br><br>No. 2517 — September 2, 2016 |

Appeal from the Superior Court, Third Judicial District, Kenai, Anna M. Moran, Judge.

Appearances: Charles P. Moran, *in propria persona*, Soldotna, for the Appellant. Callie Patton Kim, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Alaska Public Defender Agency, appearing as *amicus curiae* aligned with the Appellant. Terisia Chleborad, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Michael C. Geraghty and Craig W. Richards, Attorneys General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Hanley, District Court Judge.[*]

Judge MANNHEIMER.

---

[*]     Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

In the early morning of June 26, 2011, Charles P. Moran was arrested for assaulting his wife Amanda. Later that day, Moran initiated the first of seven telephone calls that he made to his wife from jail.

Moran told Amanda that he loved her. When Amanda complained about her injuries, and when she blamed Moran for causing those injuries, Moran told Amanda that she had been injured by falling down the stairs, and then he told her that he did not want to say anything more about this matter over the phone.

Moran was subsequently convicted of two criminal charges: one count of third-degree assault,[1] and one count of second-degree unlawful contact.[2] Moran now challenges the validity of those convictions.

With regard to Moran's unlawful contact conviction, the statute that defines this crime, AS 11.56.755(a), declares that a defendant commits the crime of second-degree unlawful contact if, having been arrested for one of the crimes defined in AS 11.41 ("offenses against the person") or for any other crime of domestic violence, the defendant "initiates communication or attempts to initiate communication with the alleged victim of the crime" before the defendant's initial appearance in front of a judge or magistrate (or before the dismissal of the criminal charge, if that occurs first).

Moran's argument on appeal hinges on the fact that this statute does not expressly require the State to prove that a defendant was ever *notified* that it would be illegal for the defendant to communicate with (or attempt to communicate with) the alleged victim. Moran argues that the statute is unconstitutional because it does not require proof of notice.

---

[1] AS 11.41.220(a)(5).

[2] AS 11.56.755(a).

More specifically, Moran contends that, unless defendants are told about this statutory prohibition, defendants would have no reason to think that it would be unlawful for them to communicate with the victim. Thus, Moran argues, the statutory definition of the crime violates the constitutional guarantee of due process of law.

The State responds that Moran is essentially arguing that his conviction should be set aside because he was unaware that there was a statute that made his conduct a crime. Relying on the maxim, "ignorance of the law is no excuse", the State argues that it does not matter whether Moran knew that his act of telephoning his wife constituted a crime.

For the reasons explained in this opinion, we conclude that Moran has the better of this argument. Before the State could lawfully impose a criminal penalty on Moran for telephoning his spouse, the State was required (at a minimum) to prove that Moran was told that it was unlawful for him to contact his spouse. We therefore reverse Moran's conviction for second-degree unlawful contact.

With regard to Moran's third-degree assault conviction, Moran argues that the trial judge improperly allowed the State to rely on inadmissible evidence at trial, and he also argues that his trial on this charge should have been bifurcated (because one element of the State's proof was that Moran had prior convictions for assault). For the reasons explained in this opinion, we conclude that neither of those claims has merit.

*The constitutional limits on the doctrine that "ignorance of the law is no excuse"*

The well-known maxim, "Ignorance of the law is no excuse", encapsulates two inter-related principles: (1) that the government normally is not required to prove that a criminal defendant was aware of the fact that a statute prohibited the defendant's

conduct, and (2) that a defendant normally is not allowed to defend a criminal charge by asserting ignorance of the governing law.

These two principles clearly apply when the conduct for which the defendant is being punished is "*malum in se*" — that is, "[conduct] which reasoning members of society regard as condemnable". *Hentzner v. State*, 613 P.2d 821, 826 (Alaska 1980). In such cases, a defendant's "awareness of the commission of the [prohibited] act necessarily carries with it an awareness of wrongdoing", and it does not matter whether the defendant was subjectively aware that there was a criminal statute covering their conduct. *Ibid.*

The supreme court described this general rule in *Alex v. State*, 484 P.2d 677 (Alaska 1971):

> [The government need not prove a person's] awareness that [his] given conduct ... is a "wrongdoing" in the sense that it is proscribed by law, but rather ... an awareness that one is committing the specific acts which are defined by law as a "wrongdoing". It is … no defense that one was not aware [that] his acts ... were proscribed by law. So long as one acts intentionally, with cognizance of his behavior, he acts with the requisite awareness of wrongdoing. In the words of [United States Supreme Court] Justice Holmes:
>
> > If a man intentionally adopts certain conduct in certain circumstances known to him, and that conduct is forbidden by the law under those circumstances, he intentionally breaks the law in the only sense in which the law ever considers intent.
>
> *Ellis v. United States*, 206 U.S. 246, 257, 27 S.Ct. 600, 602, 51 L.Ed. 1047, 1053 (1907).

*Alex*, 484 P.2d at 681-82.

But though this is the rule that generally applies, there are due process limits to this rule. As our supreme court explained in *Hentzner*, some criminal statutes punish conduct that the law classifies as *malum prohibitum* — *i.e.*, conduct that is not inherently bad in and of itself, but is nevertheless proscribed for reasons of social policy. With regard to these *malum prohibitum* offenses, where "there is no broad societal concurrence that [the underlying conduct] is inherently bad",

> [c]onsciousness on the part of the actor that he is doing the act [that happens to be proscribed by law] does not carry with it an implication that he is aware that what he is doing is wrong. In such cases, more than mere conscious action is needed to satisfy the criminal intent requirement [of the due process clause].

*Hentzner*, 613 P.2d at 826.

### *The potential constitutional problems posed by Alaska's unlawful contact statute*

The offense that Moran was convicted of — second-degree unlawful contact as defined in AS 11.56.755(a) — is a *malum prohibitum* offense. This statute restricts the actions of defendants from the time of their arrest until the time of their first appearance before a judicial officer, prohibiting them from initiating (or trying to initiate) a communication with the alleged victim of their crime.

The legislature enacted this statute for the purpose of restricting the right granted by AS 12.25.150(b) — the right of all arrestees to "telephone or otherwise communicate with [an] attorney and [with] any relative or friend".

More specifically, the unlawful contact statute was intended to prevent domestic violence offenders from using this statutorily guaranteed telephone call to

"harass [their] victims", or to try to "beat the charge" by using the telephone call to threaten their victims or to otherwise induce the victims to falsely recant their accusations.[3]

Such activities were, of course, already illegal.[4] In essence, the legislature decided to make sure that these potential unlawful uses of the telephone would never occur in the first place — by prohibiting *all* communication between arrested defendants and victims, regardless of the purpose and content of those communications. This prohibition remains in place until the arrestee's first appearance in front of a judicial officer — which can take up to two days. (Alaska Criminal Rule 5(a)(1) declares that an arrestee's first appearance must occur "without unnecessary delay and in any event within 48 hours after arrest".)

But when, as in Moran's case, a charge of domestic violence involves a spouse or long-term domestic partner, there are legitimate reasons why an arrestee might wish to communicate with the alleged victim over the course of the two days following their arrest. The arrestee might want to make sure that arrangements are in place to pay the rent, or that someone is available to provide needed medical care, or household transportation, or to babysit children, or to care for elderly members of the household.

---

[3] *See* the Minutes of the House Judiciary Committee of May 6, 1997, discussing House Bill 245.

[4] *See* AS 11.56.510 ("interference with official proceedings": using threats to improperly influence a witness's testimony); AS 11.56.540 (first-degree "tampering with a witness": inducing or attempting to induce a witness to testify falsely or misleadingly, or to unlawfully withhold testimony); AS 11.56.790 ("compounding": offering a benefit to another person to get them to conceal an offense, or to refrain from assisting in the prosecution of the offense, or to withhold evidence of the offense); AS 11.61.120(a)(4) (second-degree "harassment": telephoning another person and threatening them with physical injury).

These types of communications between spouses or domestic partners are protected by the constitutional rights of association and privacy — even when one spouse or partner is charged with a crime (or even convicted of a crime) that involves the other.

For instance, in *Williams v. State*, 151 P.3d 460, 469-471 (Alaska App. 2006), this Court struck down a provision of Alaska's bail statutes that prohibited defendants charged with a crime of domestic violence from returning to the residence they shared with the alleged victim during the pendency of the criminal case. We concluded that, in the absence of a judicial finding that the defendant posed an ongoing danger to the alleged victim, there are too many situations where this provision would "infringe an important liberty interest without advancing any significant governmental interest". *Id.* at 468. See also *Dawson v. State*, 894 P.2d 672, 680 (Alaska App. 1995), where this Court held that "[any] condition of probation restricting marital association plainly implicates the constitutional rights of privacy, liberty[,] and freedom of association" — and that, for this reason, it "must be subjected to special scrutiny".

Turning to the provisions of the unlawful contact statute, we acknowledge that the prohibition on communications between the defendant and the alleged victim is of a much shorter duration than conditions of bail or probation (no more than 48 hours). And as we noted in *dictum* in *Williams*, a short-term prohibition of this sort might conceivably be justified as a measure to "defus[e] a potentially violent situation until a judicial officer can assess the danger to the alleged victim". *Williams*, 151 P.3d at 469.

But the fact that there are potential rationales for the unlawful contact statute's ban on domestic communications does not necessarily mean that this ban is constitutional.

Any law that categorically forbids spouses and domestic partners from communicating with each other encroaches upon the rights of privacy and familial

association. And because a total ban on communication necessarily encompasses a fair amount of innocent or harmless communications, such a ban is constitutionally suspect.

As Professor LaFave notes in his treatise on substantive criminal law, courts often confront situations like the present case — situations where the legislature has totally proscribed the knowing performance of certain acts, "even though [not] all who engage in such acts are ... bent upon some evil or harmful course." [5]

The general rule is that the legislature may prohibit a particular act if it is generally harmful to society, even though some people perform the act without a criminal purpose. [6] But as Professor LaFave explains, "the legislative power in this regard is not without limits". Courts have struck down such statutes as unconstitutional if "they are too sweeping in encompassing activity that is wholly innocent" [7] — *i.e.*, if the legislature has defined the prohibited conduct so broadly that it needlessly encompasses large amounts of harmless conduct.

It is debatable whether Alaska's unlawful contact statute would fail this test. But we need not address these issues further, because Moran does not directly challenge the underlying constitutionality of the unlawful contact statute. Rather, Moran argues that if a defendant is to be criminally prosecuted for communicating with a spouse or domestic partner, due process requires at a minimum that the defendant receive advance notice that these communications are prohibited.

---

[5] Wayne R. LaFave, *Substantive Criminal Law* (2nd ed. 2003), § 3.3(c), Vol. 1, p. 205.

[6] *Id.*, Vol. 1, p. 206.

[7] *Ibid.*

*Why we conclude that the unlawful contact statute must be construed to require proof that the defendant was notified that they were prohibited from contacting the alleged victim*

Our unlawful contact statute poses the same kind of due process problem that the supreme court addressed in *Hentzner*. That is, the unlawful conduct statute bans conduct that is not inherently bad in and of itself, but is instead proscribed for reasons of social policy. In an attempt to make sure that defendants do not engage in communications that would be unlawful (telephonic threats, harassment, etc.), the legislature has banned *all* communications with the alleged victim — including communications that are completely innocent and, at least potentially, communications that are necessary to the running of the defendant's and victim's joint household.

In this situation, a defendant's consciousness that they are doing the act proscribed by the statute (*i.e.*, communicating with the alleged victim) "does not carry with it an implication that [the defendant] is aware that [this conduct] is wrong." *Hentzner*, 613 P.2d at 826. This being so, and because a violation of the unlawful contact statute subjects the defendant to imprisonment, the due process clause of the Alaska Constitution requires the government to prove "more than mere conscious action". *Ibid.*

We accordingly hold that a defendant can not be convicted of violating the second-degree unlawful contact statute without proof that they were expressly informed of the statute's prohibition on communications with the alleged victim.

We leave for another day the question of whether the statute, so construed, still constitutes an unconstitutional infringement on the rights of privacy and familial association.

2517

*The admissibility of Moran's prior convictions*

At a pre-trial hearing, Amanda Moran testified about two prior incidents of domestic violence committed against her by Moran. In February 2009, Moran slapped her across the face and threw a remote control at her. Based on this incident, Moran pleaded guilty to fourth-degree assault. And in October 2010, Moran shoved Amanda against a wall, punched her in the face, and strangled her. Based on this incident, Moran pleaded guilty to another charge of fourth-degree assault.

On appeal, Moran concedes that evidence of these two prior assaults was admissible under Alaska Evidence Rule 404(b)(4), and that Amanda might properly have testified about these incidents. But at Moran's trial, the prosecutor did not ask Amanda to testify about the details of these two prior incidents. Instead, the prosecutor called a court records custodian to introduce the charging documents and the final judgements in the two prior criminal cases.

On appeal, Moran argues that the judgements of conviction in the two prior cases were inadmissible hearsay to the extent they were offered to prove that Moran actually assaulted his wife. Moran is correct: in *Jones v. State*, 215 P.3d 1091, 1098-1100 (Alaska App. 2009), we held that evidence of a criminal conviction is inadmissible hearsay under Alaska law "if it is offered to prove that the defendant actually engaged in the conduct that would justify that conviction."[8]

But the State *was* authorized to introduce evidence that Moran *pleaded guilty* to the two prior assault charges. Those two guilty pleas were Moran's personal admissions that he engaged in the criminal conduct charged against him. Moran's guilty pleas were thus admissible (when offered by the State) as statements of a party opponent under Alaska Evidence Rule 801(d)(2).

---

[8]    Citing and quoting *Douglas v. State*, 166 P.3d 61, 85 (Alaska App. 2007).

This point of law is explained in the "Note on Omission" included as part of the Commentary to Alaska Evidence Rule 803. This "Note on Omission" declares that a criminal judgement is not admissible to prove that the defendant engaged in the conduct that would justify the entry of that judgement. But this Note also declares that guilty pleas *are* admissible under Evidence Rule 801(d)(2) — *i.e.*, admissible as statements of a party opponent — unless the evidence is barred by Evidence Rule 410 (*i.e.*, unless the plea is not accepted, or is withdrawn, or is vacated or reversed on appeal).

To sum up this discussion: Moran is correct that the prosecutor should not have been allowed to introduce the prior judgements *as independent evidence that Moran engaged in the conduct that would justify his two prior assault convictions*. However, because those judgements were proof that Moran *admitted the two prior assaults by pleading guilty*, it was proper for the prosecutor to introduce those judgements as admissions of a party opponent.

(More specifically, the written judgements were admissible under Alaska Evidence Rule 803(8), the hearsay exception for public records, to the extent that these judgements were official records of the fact that Moran pleaded guilty to the prior charges.)

*Moran's argument that his trial should have been bifurcated*

Moran also claims that his trial on the third-degree assault charge should have been bifurcated because the State introduced evidence of his two prior assault convictions.

Moran was charged with third-degree assault as defined in AS 11.41.220(a)(5). This charge required the State to prove that Moran had two prior convictions for assaultive offenses within the preceding ten years. Moran argues on

appeal that the court should have bifurcated his trial on this count, so that the jurors would not be informed of Moran's prior convictions until after they found him guilty of the assault in the present case.

But as Moran concedes, evidence of the two prior assaults (*i.e.*, evidence of the assaults themselves, as opposed to Moran's *convictions* for those assaults) was admissible under Evidence Rule 404(b). And as we have just explained, to prove those two prior assaults, the State was entitled to introduce evidence that Moran pleaded guilty to those assaults.

Conceivably, one might argue that the trial judge should have required the State to prove Moran's guilty pleas by means other than the two prior judgements — *e.g.*, through the testimony of people who were present in court when Moran offered his pleas, or by playing the audio record of those proceedings. But as a practical matter, telling the jurors that Moran was *convicted* based on his guilty pleas added little or nothing to the State's case; the jurors would inevitably have deduced this.

Thus, even if Moran might have been entitled to a bifurcation of his trial under other circumstances, holding a unitary trial was not error under the facts of Moran's case.

*Conclusion*

Moran's conviction for second-degree unlawful contact is REVERSED. His conviction for third-degree assault is AFFIRMED.