# CHARLEY DUMAS v. STATE.

No. A-8474.   Dec. 9, 1932.
(16 Pac. [2d] 886.)

Redwine & Hill, for plaintiff in error.

The Attorney General, for the State.

CHAPPELL, J.   Plaintiff in error, hereinafter called defendant, was, upon his plea of guilty in the district court of Coal county, sentenced to death by electrocution in the state penitentiary of McAlester.

It appears from the record that on the 10th day of September, 1932, in Coal county, the offense of rape by force was committed upon the person of Edna Boardman; that defendant was a negro convict serving time in the penitentiary at McAlester, assigned to one of the road

camps near Coalgate; that on the evening of the 10th of September defendant obtained a walking pass from the superintendent in charge, and violated same by going to the town of Coalgate; that immediately after the offense was committed defendant and some ten or more negroes in the road camp were arrested and taken to McAlester for safekeeping; that some time during the night the officers obtained from defendant a signed statement admitting his guilt; that a complaint was filed in the county court of Coal county on the 13th day of September, 1932, and a warrant issued thereon; that defendant was arrested upon such warrant and taken from the penitentiary to Coal county in the custody of the warden, assistant warden, and a number of armed guards; that there were present in the courtroom W. B. Thornsbrough, county judge, P. L. Gassaway, district judge, Wylie Snow, county attorney, R. Kay Matthews, court clerk, and Judge E. Moore; that defendant was arraigned immediately before Judge Thornsbrough sitting as examining magistrate, and, without counsel and under these surroundings, waived preliminary hearing; that the magistrate immediately filed a transcript of the proceedings with the court clerk; that the county attorney then filed an information, and thereupon defendant was arraigned in the district court; that, upon being asked by the court if he had an attorney, he said, "No," and that he did not desire an attorney; that thereupon the court made the following order: "Let the record show that the district judge appointed Judge Moore to represent the defendant for the purpose of examining the record and purpose of pleading;" that immediately thereafter the following proceedings were had:

"Mr. Snow (county attorney): At this time, I want to serve the defendant with a copy of the information and a list of the witnesses in open court;" and immediately

thereafter the following appears: "At this time, Judge E. Moore and the defendant have a private conference at the table in the bar of the court, after which the following proceedings were had; * * *" that following this brief conference, defendant entered his plea of guilty and was by the court sentenced to death by electrocution.

Defendant through affidavit filed by his counsel claims that he was taken into the sheriff's office on the ground floor, in the rear of the courthouse, and up a private stairway or passageway leading from the sheriff's office to the district courtroom; that C. L. Cardwell, a newspaper man, two attorneys, and some other persons were present in the courtroom at the time defendant was arraigned; that, upon the order of Judge Gassaway, the doors of the courtroom were locked and none of the persons present permitted to leave nor persons on the outside to come in; that the magistrate had his transcript already prepared ready for his signature before defendant was arraigned, and, after signing it, immediately filed it with the clerk of the district court; that less than 40 minutes elapsed between the time when defendant was brought before the examining magistrate and arraignment had, plea taken, judgment and sentence pronounced, and defendant started on his return to the penitentiary.

Section 20, article 2, of the Constitution, provides:

"In all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury of the county in which the crime shall have been committed: Provided, that the venue may be changed to some other county of the state, on the application of the accused, in such manner as may be prescribed by law. He shall be informed of the nature and cause of the accusation against him and have a copy thereof, and be confronted with the witnesses against him, and have compulsory process for obtaining witnesses in his behalf. He

shall have the right to be heard by himself and counsel; and in capital cases, at least two days before the case is called for trial, he shall be furnished with a list of the witnesses that will be called in chief, to prove the allegations of the indictment or information, together with their postoffice addresses."

In capital cases, where defendant is without counsel and unable to employ same, the court must appoint counsel for him and must give such counsel time to investigate the facts, examine the law applicable to the case, and prepare for trial. Goben v. State, 20 Okla. Cr. 220, 201 Pac. 812; Ex parte Hollins, 54 Okla. Cr. 70, 14 Pac. (2d) 243.

In Sutton v. State, 35 Okla. Cr. 263, 250 Pac. 930, this court said:

"The constitutional right to be heard by counsel is not limited to the right to be heard by counsel at the time of the trial. Every person accused of felony is entitled to the benefit of counsel at every stage of the proceeding, whether imprisoned or admitted to bail."

In Powell et al. v. State of Alabama, 53 S. Ct. 55, 58, 77 L. Ed.—, that court said:

"It is hardly necessary to say that the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice. Not only was that not done here, but such designation of counsel as was attempted was either so indefinite or so close upon the trial as to amount to a denial of effective and substantial aid in that regard. * * *

"The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left

without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much more true is it of the ignorant and illiterate, or those of feeble intellect."

In the case at bar, the court made no unqualified order appointing counsel for defendant to represent him at all stages of the proceedings. After judgment and sentence was pronounced, counsel appointed by the court saved no exceptions and took no further action in the case, not even filing a motion for a new trial, evidently treating the appointment as a limited one and without authority to proceed beyond the plea of defendant. The attempted appointment was a nullity, leaving defendant in effect without counsel.

When appellant has been sentenced to death, the record will be carefully investigated and errors considered whether excepted to or not. Turner v. State, 8 Okla. Cr. 11, 126 Pac. 452; Anderson v. State, 8 Okla. Cr. 90, 126 Pac. 840, Ann. Cas. 1914C, 314.

Trial courts of this state must learn that the Constitution means exactly what it says; that something more than haste is required in pronouncing judgment in cases of this character. The orderly proceeding of the court would require service of a copy of the information on defendant before he was arraigned, and, in capital cases, a list of the witnesses should be served upon him at least two days before the case is called for trial; that, when

defendant is without counsel, the court should appoint counsel for him and adjourn the hearing for a sufficient time to permit counsel to consult his client and prepare for his plea and trial; that, when a plea of guilty is entered or a verdict of jury returned, the court should fix the statutory time for pronouncing sentence, thus preserving all the constitutional and statutory rights of defendant.

Defendant was an ignorant negro, surrounded by armed guards, and, being brought into court under the circumstances detailed in this opinion, with limited opportunity to confer with counsel and consider his plea, naturally would not be sufficiently advised to intelligently or voluntarily enter his plea or take part in any hearing.

This court has held that a defendant may waive many of his constitutional rights. Upon the whole record, we cannot say that defendant was represented by counsel or knowingly or voluntarily waived any of his constitutional rights.

A heinous crime has undoubtedly been committed. The guilty party should be given a speedy trial and punished according to law, but these conditions will not justify judicial murder. Every defendant, no matter what his color, nationality, or political or social standing may be, is entitled to the equal protection of the law. Where it appears upon the face of the record that a defendant has not waived his constitutional rights and has been denied such rights, this court will not permit the judgment and sentence to stand.

For the reasons stated, the cause is reversed and remanded, with directions that defendant be arraigned in

the district court of said county, at a convenient time, and there proceeded against according to law.

DAVENPORT, P. J., and EDWARDS, J., concur.