[Crim. No. 1823.   Third Dist.   Dec. 2, 1943.]

THE PEOPLE, Respondent, v. BILLY McGARVY, Appellant.

Manwell & Manwell for Appellant.

Robert W. Kenny, Attorney General, and T. G. Negrich, Deputy Attorney General, for Respondent.

PEEK, J.—This is an appeal from an order denying defendant's petition to change his plea from guilty to not guilty, and to set aside the judgment entered thereon.

The record discloses that he was arrested early Sunday morning, August 9, 1942. On the following afternoon he was arraigned in the Justice's Court of Colusa Township, on a complaint alleging two counts, the first, murder, and the second, manslaughter.

At the time of the arraignment defendant stated that he would like to talk to an attorney but that he had no money, and he asked if the court appointed attorneys. He was advised the justice's court had no such authority but that it would not be necessary to have an attorney at the preliminary hearing. The court then adjourned until 2:00 o'clock the following afternoon. The next morning at 10:25 the defendant again appeared in the justice's court, but with an attorney. He then plead "guilty" to the charge of manslaughter and "not guilty" to the charge of murder. The record contains no explanation for the advancement of the time for the preliminary examination from 2:00 o'clock p. m. to 10:25 o'clock a. m. Ten minutes later, at 10:35 o'clock of the same day, the defendant, with the attorney, appeared for sentence before the superior court, at which time the defendant was sentenced upon his plea of guilty to the charge of manslaughter. Upon motion of the district attorney the murder

charge as contained in Count I of the complaint, was dismissed because of "the insufficiency of the evidence and on the grounds that it is inconsistent to the present plea."

Thereafter, on the 13th day of August, the defendant substituted his present counsel in place of the attorney who had appeared with him at his arraignment and plea. On the same date he also filed a motion to set aside the judgment, and for permission to change his former plea of guilty to not guilty. Attached to said petition and in support thereof, was the affidavit of defendant to the effect that after his arrest he had requested permission to talk with members of his family or an attorney, but permission was refused; that he was not allowed to see anyone; that he was advised by the attorney who appeared with him that he should plead guilty to the charge of manslaughter and waive time for sentence; that he did not have sufficient time within which to discuss his case with the attorney; that he had always maintained his innocence; that he was never fully advised of the seriousness of the crime nor did he understand the nature of the proceedings; that had he been properly or completely advised he never would have plead guilty to the offense; that because all of the proceedings were so hurried he "was not given time to think of anything." Also as a part of said motion, but filed at the time of the hearing thereon, was the affidavit of one Retha Smith, to the effect that she was with the defendant at the time of his arrest early Sunday morning; that on the same day she conferred with members of his family and was instructed by them to employ a lawyer to represent him; that the following morning (Monday) she made arrangements with defendant's present counsel to represent the defendant, and was instructed by counsel to communicate with the defendant and inform him that said counsel would visit him the following morning (Tuesday); that she went to the sheriff's office on the same day (Monday) and informed the attendant that the defendant had a lawyer and that she wished to inform him of that fact; that she was refused admission to see the defendant; that the said attorney did arrive in Colusa between the hour of 10:30 and 11:00 o'clock a. m. Tuesday, August 11th, but by the time he arrived the case against the defendant had been concluded.

In opposition to the motion by defendant, were affidavits of the attorney who appeared with him in the justice's and

superior courts, the justice of the peace, and the arresting officer. The affidavit of the attorney merely stated the fact of a conversation with defendant prior to the hearing on August 10th, which was at the request of the district attorney to "at least talk to him" (defendant). The affidavit of the justice of the peace recounted the conversation between the attorney and defendant in the court room, the circumstances of the hearing before him, and alleged that in his opinion the defendant was fully informed concerning the proceeding, and that there was no fraud or duress affecting the will of the defendant nor were there any inducements or promises other than his own statement that "in my opinion . . . the plea of guilty to the charge of manslaughter would automatically dismiss the charge alleged in Count I, namely: that of murder." The affidavit of the deputy sheriff who arrested the defendant was much to the same effect.

Inasmuch as the defendant makes an issue of the question of time and the inadequacy of his discussion with the attorney, it should be noted further that the affidavit of the justice of the peace states that the attorney was called to the court room, and upon his arrival he was introduced to the defendant; that after conversing together for 20 or 30 minutes in an anteroom they reappeared in court and stated they were ready to proceed. The affidavit of the attorney, however, states that he was called Tuesday morning by the district attorney and asked if he would "at least talk" to "a defendant charged with murder and manslaughter," and that he did talk with the defendant at the county jail.

The record further discloses that the justice's court convened Tuesday morning at the hour of 10:25 o'clock, and that the superior court was called to order at the hour of 10:35 o'clock of the same day. All of the affidavits agree that the defendant and the attorney conversed only 20 to 30 minutes. It is hard to conceive that 20 to 30 minutes would be sufficient time for an attorney to discuss the facts of murder and manslaughter charges to determine what steps should be taken, such as legality of defendant's detention, insufficiency of the charge, possible petition for a writ of habeas corpus, or other legal processes, and then, with such scanty knowledge feel competent to advise a plea of guilty.

It is apparent that said attorney did not represent the defendant by virtue of an order of appointment by the court

but only upon request of the district attorney to at least talk to a defendant. Also in this regard it is noteworthy that the attorney should file an affidavit on behalf of the prosecution, in opposition to the petition of the one for whom he originally appeared, the defendant herein. It is obvious that no such duty was impressed upon him as would have been the case had he been appointed by the court to represent the defendant.

It is frequently said that one of our most common and prevalent evils is the sometimes inexcusable delay in the enforcement of our criminal laws. Without doubt prompt disposition of criminal cases should be encouraged. Commendable as that may be, "something more than haste is required." (*Dumas* v. *State*, 54 Okla.Cr. 207 [16 P.2d 886].) But in reaching the desired result a defendant charged with a serious crime must not be stripped by token gestures of his right to have sufficient time to advise with counsel of his own choosing and to prepare his defense properly. "Time may be precious to the court; but it is infinitely more so to him whose life or liberty may depend upon the careful and patient consideration of the evidence." (Cooley, Const. Limitations, 8th ed., p. 704.)

With all due respect to the advice given by the court to the defendant, and to the undoubtedly good motives of all parties concerned, we cannot escape the conclusion that there was undue haste in the entire disposition of the case.

It is not enough to assume that counsel, without obligation to the defendant and so casually precipitated into a case, thought there was no defense and exercised his best judgment in proceeding without preparation. Neither could the court, in such a short space of time, say what a prompt and thorough investigation might disclose. Here there was neither investigation nor preparation. As was observed by the Chief Justice of the Supreme Court of Alabama in his dissenting opinion in the Scottsboro cases, which opinion was later affirmed by the United States Supreme Court in *Powell* v. *Alabama*, 287 U.S. 45 [53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527] : "The record indicates that the appearance was rather pro forma than zealous and active." The duty of the court to assign counsel to defendants charged with crime is not discharged by the assumed delegation of such duty by the district attorney, who is without power to do more than was done

in this case—merely ask an attorney if he would talk to a defendant. Such a perfunctory appearance at the request of the district attorney is a practice not to be commended. Under such circumstances the defendant is precluded from receiving effective aid in the preparation and the trial of the case.

From the statements made by defendant in open court, it is evident that he knew of no attorney of his own personal acquaintance, and that to procure counsel he, of necessity, had to look to his family, who resided elsewhere, or failing in that to the bounty of the court. "It is hardly necessary to say that the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice." (*Powell* v. *Alabama, supra.*)

Here the evidence discloses that the defendant left school in the eighth grade, and since that time had been a farm laborer, neither experienced in business nor commercial practices. Few, if any, intelligent and well educated laymen are schooled in the science of law, and if charged with a crime are capable of determining for themselves whether the indictment is good or bad. They are unfamiliar with the rules of evidence, lacking both the skill and knowledge to prepare their defense adequately, even though they may have a perfect one. They require the guiding hand of counsel at every step of the proceeding. Though they be not guilty they face the danger of conviction because they do not know how to establish their innocence. If this be true of a man of intelligence how much more true it is of those without adequate schooling and experience.

Respondent, however, contends that there was no statutory compulsion to require that either the friends or family of the accused be allowed to see him; that the deputy sheriff stated he would get in touch with his counsel for him, and that in any event, to grant the motion of defendant it would be necessary to show misrepresentation, coercion, wrongful persuasion and promise of something which was not carried out; in other words, that there must be some act by some official connected with the case amounting to a fraud or an infringement upon the inherent rights of the defendant, and that in the present case no such showing has been made. We do not so understand the law. While such matters must be addressed to the sound discretion of the trial court, with each case

viewed in the light of its own particular circumstances, "when there is reason to believe that the plea has been entered through inadvertence, and without due deliberation, or ignorantly . . . the Court should be indulgent in permitting the plea to be withdrawn." (*People* v. *McCrory*, 41 Cal. 458, 462.) It might well be added that a court, in furtherance of justice, and upon such terms as may be proper and just, should likewise "relieve a party . . . from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect." (Sec. 473, Code Civ. Proc.) For how can it be contended seriously that when an inalienable constitutional right of a citizen is at stake in a criminal proceeding a greater and more technical showing is necessary than is contemplated by our civil law when relief is sought from the judgments or orders taken against him. Where a right is conferred by law everything necessary for its protection is also conferred. (*Turner* v. *State*, 91 Tex. Cr. 627 [241 S.W. 162, 23 A.L.R. 1378].)

It was undoubtedly upon the attorney's advice that the defendant made his plea of guilty, and it is not too much to say that it is not improbable that defendant might not have done so if he had been advised that his family had secured for him the services of his present counsel. Nor is it too much to say that his financial straits may likewise have led him to consent to the procedure which was followed through ignorance of the availability of counsel of his own. This does not necessarily mean that he was improperly induced to so plead. But the fact that he may have been ably advised "does not abridge his right to have counsel of his own selection." (*Jackson* v. *State*, 55 Tex.Cr. 79 [115 S.W. 262, 131 Am. St.Rep. 792].)

His present counsel, in the orderly course of events, did endeavor to converse with the defendant, and had no change been made in the time set for the appearance of the defendant, for which no explanation appears in the record, he might have had ample time to converse and advise with him prior to the making of his plea. There is nothing to show that defendant's motion was not made in good faith or that the entry of the plea and the motion to withdraw it was a mere artifice intended for delay.

We do not point to any one circumstance in this case and say that because of it defendant is entitled to withdraw his

plea; but, considering all of the facts, it seems to this court that the ends of justice demand it. ▮ As the withdrawal of a plea of guilty is within the discretion of the trial court, and as such discretion must be exercised upon the facts of each individual case, it is difficult to lay down a general rule. However, the withdrawal of a plea of guilty should not be denied in any case where it is in the least evident that the ends of justice would be subserved by permitting the defendant to plead not guilty instead; and it has been held that the least surprise or influence causing a defendant to plead guilty when he has any defense at all should be sufficient cause to permit a change of plea from guilty to not guilty. (*State* v. *Williams*, 45 La.Ann. 1356, 1357 [14 So. 32]; 20 A.L.R. 1450.) "The law seeks no unfair advantage over a defendant, but is watchful to see that the proceedings . . . shall be fairly and impartially conducted." (*People* v. *Schwarz*, 201 Cal. 309 [267 P. 71].)

▮ We believe this is a case in which the court below should have exercised its discretion in favor of defendant. No possible harm could have resulted or can result to the State by allowing him to withdraw his plea of guilty and substitute a plea of not guilty. If he is innocent of the charge, as he has maintained, he ought to have a fair opportunity for a defense; otherwise, he would, under the ruling complained of, suffer a great wrong. If he is guilty, the law may still be vindicated, and the State will have an opportunity to establish that guilt under a plea of not guilty. (*City of Salina* v. *Cooper*, 45 Kan. 12 [25 P. 233], citing with approval the case of *People* v. *McCrory, supra; State* v. *Brown*, 33 N.M. 98 [263 P. 502].)

▮ We find no merit in the second issue raised by defendant. Since the defendant pleaded guilty to the charge of manslaughter, a crime not punishable by death, and by virtue of such plea the separate count of murder was for all purposes abandoned by all of the parties, it would seem that the procedure followed was in substantial compliance with section 8, article I of the Constitution and section 859a of the Penal Code. Therefore, it became unnecessary to proceed by information in the superior court as provided in section 682 of the Penal Code, "for . . . upon such plea of guilty, the magistrate shall immediately commit the defendant to the sheriff and certify the case, . . . to the Superior Court, and

thereupon such proceedings shall be had as if such defendant had pleaded guilty in such court.'' (Sec. 859a *supra; People* v. *Zolotoff,* 48 Cal.App.2d 360 [119 P.2d 745].)

We therefore conclude that the law was not complied with by the token appearance of an attorney brought into the case by the district attorney; that under the facts and circumstances as disclosed by the record the defendant's right to be represented by counsel of his own choice was invaded, and that therefore it was an abuse of discretion by the trial court to deny the motion of defendant.

The judgment and order appealed from are reversed, and the cause hereby remanded for trial in accordance with the opinion herein expressed.

Adams, P. J., and Thompson, J., concurred.